**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**CHRISTINA MARTINEZ,**

       **Plaintiff,**

            **Case No. 1:25-cv-943**

     **v.**

            **JUDGE DOUGLAS R. COLE**
**BUTLER COUNTY JAIL, et al.,**     **Magistrate Judge Gentry**

       **Defendants.**

### OPINION AND ORDER

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Christina Martinez, a Canadian citizen, pending removal. Martinez, proceeding pro se, filed a Petition for Writ of Habeas Corpus (Doc. 1), requesting that the Court order her release. Specifically, she claims that her immigration detention resulted from an unlawful arrest, and so she cannot be detained. (*Id.*). While she initially raised claims regarding a medical condition, she has since dropped those claims in her Amended Petition (Doc. 21). For the reasons explained below, the Court **DENIES** her Petition (Doc. 21).

### BACKGROUND[1]

Petitioner Christina Martinez is currently detained at Butler County Jail. (Doc. 1, #2). She is a Canadian citizen. (Doc. 16, #61). The Department of Homeland Security (DHS) admitted Martinez to the United States around July 6, 2024, as a

---

[1] While Petitioner has filed an Amended Petition (Doc. 21), that Petition is largely devoid of factual allegations. The Court, then, will still refer to the facts alleged in the original Petition, but it will address only the legal claims raised in the Amended Petition.

"nonimmigrant Visitor For Pleasure." (Notice to Appear, Doc. 16-1, #77; DHS R., Doc. 16-2, #83). That nonimmigrant visa authorized her to remain in the United States until September 29, 2024. (Doc. 16-1, #77). On August 13, 2025, Martinez was arrested in Miamisburg, Ohio, for obstruction of justice and brought to Montgomery County Jail where she was held "under poor conditions." (Doc. 1, #2, 5; Doc. 16-2, #85). A little over a month later, on September 17, 2025, a judge dismissed the criminal charges against her, allegedly because her arrest was unlawful. (Doc. 1, #2, 6).

Rather than releasing her, however, authorities transferred Martinez to Butler County Jail under an immigration detainer. (*Id.* at #2–3; DHS Arrest Warrant, Doc. 16-3, #87). After her transfer, she received a Notice to Appear in immigration court, (Doc. 16-1, #77), and she made "multiple appearances" before Defendant Immigration Judge Jennifer Riedthaler Williams, (Doc. 1, #2). Specifically, Judge Williams held a custody redetermination hearing on October 31, 2025, and she denied bond because she deemed Martinez a flight risk and danger to the community. (Custody Order, Doc. 16-4, #88). And on November 25, 2025, Judge Williams entered a final order of removal for Petitioner. (Removal Order, Doc. 16-5, #92). Appeals of these two orders were due on December 1 and December 26, 2025, respectively. (*See* Doc. 16-4; #89; Doc. 16-5, #93). No appeal has been docketed.[2]

---

[2] There is a dispute over whether Martinez timely filed an appeal. The government represents that no appeal was filed. (1/2/26 Min. Entry; Return of Writ, Doc. 16, #62). Martinez, on the other hand, alleges she mailed appeals of both orders in a timely fashion. (*See* 1/2/26 Min. Entry). Because no appeal was docketed, she claims the jail failed to mail her appeal. (*Id.*). Unfortunately, there is no tracking system; Butler County Jail filed a status report informing

Beyond her detention, Martinez currently suffers from a hand injury. (Doc. 1, #3). She alleges that she has a bone infection in her hand that was "evaluated by an orthopedic Dr. Scott Ryan Day," who identified the infection as "osteomyelitis" on December 9, 2025. (*Id.*). Based on that diagnosis, Martinez claims that "emergency surgery is in motion," and that she faces the risk of "losing her finger and/or entire hand." (*Id.*).

Because of her medical condition and ongoing detention, on December 17, 2025, Martinez, proceeding pro se, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. §§ 2241 and 2254. (Doc. 1, #2). Martinez challenged: (1) the adequacy of medical care for her hand, and (2) the legality of her detention considering a judge declared her original arrest unlawful. (1/2/26 Min. Entry; *see* Doc. 1, #9–10). So she sued the sheriffs in charge of Butler County Jail and Montgomery County Jail, as well as Jason Jalbert (the regional ICE Director) and Immigration Judge Williams. (Doc. 1, #1). Martinez requests immediate release from detention and to stay in the United States. (*Id.* at #3).

On December 29, 2025, the Court ordered Respondents to not move Petitioner to a different facility or remove her from the country. (12/29/25 Not. Order). Since

---

the Court that the "jail does not monitor outgoing mail." (Doc. 10, #44). To send mail, inmates deposit their envelope in a receptacle in their pod, and that receptacle is collected by a corrections officer each night. (*Id.* at #45 (affidavit of jail staff member)). Outgoing mail is not inspected or otherwise recorded. (*Id.*). If the post office determines the mail is undeliverable, then the mail is returned to the jail, copied, and delivered to the inmate. (*Id.*). That returned mail is not documented or recorded either unless the jail discovers it contains contraband. (*Id.* at #46). Essentially, the jail cannot determine whether Martinez timely dropped her appeal in the receptacle to be mailed or not.

then, Respondents Butler County Jail and Montgomery County Jail have filed Motions to Dismiss (Docs. 8, 9). Montgomery County Jail argues that Martinez is no longer in its custody, so it is not a proper Respondent. (Doc. 9, #41–42). Butler County Jail, meanwhile, argues that while it's holding Martinez pursuant to a contract with ICE, it also is not the proper custodian for a habeas petition; rather, the petition should be directed only to the regional ICE director. (Doc. 8, #35–36; *see also* Resp't Br., Doc. 15, #57–58 (repeating same argument)).

Respondents Jalbert and Judge Williams filed their Return of Writ (Doc. 16) on January 22, 2026. There, Respondents argue that the Court lacks subject-matter jurisdiction over a challenge to Petitioner's removal order. (*Id.* at #67–71). And even if the Court has jurisdiction, they maintain that ICE properly detained Petitioner based on a valid arrest warrant, and that arrest is not rendered invalid by any fruit-of-the-poisonous-tree theory. (*Id.* at #71–72). Additionally, Respondents argue that a habeas petition is not the proper vehicle to challenge the adequacy of medical care as a condition of confinement. (*Id.* at #72–75).

While Martinez technically filed a Reply (Doc. 18), she also moved to amend her petition in light of Respondents' arguments, (Doc. 17). The Court granted the motion to amend. (Doc. 19). Shortly thereafter, Respondents moved to vacate the Court's Order directing Respondents not to move or deport Petitioner. (Doc. 20). There seemed to be some confusion following that, potentially because Martinez proceeds pro se, because the Court had to issue a follow-up Order directing Martinez to file her Amended Petition on the docket or face dismissal. (3/2/26 Not. Order).

4

Martinez filed her Amended Petition a week later, (Doc. 21), to which the government responded, (Doc. 23). Montgomery County Jail filed a separate Motion to Dismiss (Doc. 22), repeating its earlier arguments.

Martinez's Amended Petition drops any of her claims pertaining to her medical care and focuses exclusively on the legality of her immigration detention. (Doc. 21). She challenges her detention based on (1) a fruit-of-the-poisonous-tree theory, under which the fact that her original criminal arrest was declared unlawful renders her immigration detention unlawful, and (2) her claim that the immigration detainer does not provide a sufficient basis to detain her. (*Id.* at #121–22).

With that, the matter is ripe for the Court's review.

## LAW AND ANALYSIS

**A.** **The Court Has Jurisdiction to Review a Challenge to Immigration Detention, But It Does Not Have Jurisdiction to Review a Final Order of Removal.**

Before reaching the merits of Martinez's petition, the Court must first decide whether it even has subject-matter jurisdiction to consider it. That is due not only to the Court's ever-present obligation to satisfy itself of its jurisdiction before acting, but also because Respondents argue that three separate statutory provisions deprive the Court of such jurisdiction here: 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g). (Doc. 16, #67–71). The Court finds that § 1252 strips the Court of jurisdiction to hear a challenge to Martinez's final order of removal, but the Court maintains jurisdiction over challenges regarding her detention.

As a general matter, district courts have broad jurisdiction under 28 U.S.C. § 2241 to issue a writ of habeas corpus "as law and justice require." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023). To that end, § 2241(c)(3) provides that a prisoner can bring a writ of habeas corpus when "[she] is in custody in violation of the Constitution or laws or treaties of the United States."[3] And habeas jurisdiction, once granted, is not easily revoked; there is a "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001) (citations omitted). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Id.* at 301 (citations omitted).

That said, Congress has clearly foreclosed judicial review of habeas petitions based on the execution of a final order of removal. 8 U.S.C. § 1252(g). "In the REAL ID Act, Congress decided that, as a matter of public policy, we do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020). And in that Act, "Congress sought to channel judicial review of an alien's claims related to his or her final order of removal through a petition for review" to the Board of Immigration Appeals (BIA) and eventually to the court of appeals. *Elgharib v.*

---

[3] Petitioner states that she raises her claim under 28 U.S.C. § 2254, although she also cites § 2241 for jurisdiction. (Doc. 1, #2). But § 2254 applies to a "person in custody pursuant to the judgment of a State court," and Martinez is held based on a federal immigration detainer. (*See* Docs. 16-3 (arrest warrant), 16-4 (order denying bond), 16-5 (final order of removal)). Thus, § 2241 is applicable to this case.

*Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010); *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018).

But, while a "court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Hamama*, 912 F.3d at 877 (affirming the district court's jurisdiction over detention-based claims as distinct from the removal-based claims). So the Court must determine whether Martinez raises a challenge to her order of removal, in which case the Court lacks jurisdiction, or whether she raises a challenge to her detention, in which case the Court can proceed to the merits.

It is unclear which argument Petitioner advances. Because the Court liberally construes pro se pleadings, the Court will consider both options. One of Petitioner's claims is that Montgomery County police unlawfully arrested her on criminal charges, and so her later immigration arrest is also unlawful as fruit of the poisonous tree. (*See* Doc. 21, #121, 126; 1/2/26 Min. Entry). Petitioner could be arguing that because her original criminal arrest was unlawful, anything flowing from it was also unlawful. Taken to the extreme, she could mean that the entirety of her immigration proceedings, including Judge Williams' entry of Martinez's order of removal, was unlawful. After all, in her original petition, Martinez requested to "[s]tay on American soil." (Doc. 1, #3). To the extent that is Petitioner's argument, the Court does not have jurisdiction to hear that claim. *See* 8 U.S.C. § 1252(g). The proper place to make that

7

challenge to her removal would be in an appeal to the BIA and to the court of appeals, *see id.* § 1252(a)(5), which Petitioner may or may not have attempted to do, (*see* 1/2/26 Min. Entry; Doc. 10).

Whether or not Martinez is challenging her removal, however, she clearly challenges her detention. And the Court does have jurisdiction to review that challenge. After all, her petition centers on her "false imprisonment" and how she "was detained despite the dismissal of charges." (Doc. 1, #3, 11). So the Court will proceed to the merits.

## B.     Martinez's Detention Is Lawful.

Even though the Court maintains jurisdiction to consider her detention, that does not help Martinez's case. The Court reviews each of her arguments, but concludes that it must deny her petition.

### 1.     Fruit of the Poisonous Tree Doctrine Does Not Apply Here.

Martinez claims that her original arrest by Montgomery County police was unlawful and that the judge in that case dismissed the criminal charges against her because of this unlawful arrest. (Doc. 21, #121, 126; *see* 1/2/26 Min. Entry). As a result of this criminal arrest, Petitioner alleges that ICE discovered her unlawful presence and knew where to detain her. (1/2/26 Min. Entry). She argues that ICE's discovery was a fruit of the poisonous tree, and so her resulting detention is also unlawful. (Doc. 21, #121, 126).

Respondents argue that her petition should be dismissed because her arrest and detention pending removal are lawful. (Doc. 16, #71–72; Doc. 23, #143–46).

Specifically, they claim that a person's identity is not subject to the exclusionary rule, even if their identity was discovered as a fruit of an unlawful arrest. (Doc. 16, #71–72; Doc. 23, #143–46).

The Court agrees and finds that her initial unlawful arrest does not invalidate her immigration detention. The only evidence ICE gathered from her unlawful criminal arrest was her identity. And "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) (citations omitted). In *Lopez-Mendoza*, immigration agents unlawfully arrested the petitioner, and so, in immigration court, the petitioner argued that the deportation proceeding should be terminated because of the illegal arrest. *Id.* at 1035–36. The immigration judge declined to rule on the motion and instead ordered Lopez-Mendoza removed from the country. *Id.* Upon review, the Supreme Court affirmed the removal order and held that "the person and identity of the [detainee] are not themselves suppressible." *Id.* at 1043; *see also United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005) (applying *Lopez-Mendoza* to criminal proceeding and holding identity is not subject to the exclusionary rule).

Here, then, Martinez's identity is not subject to suppression. In other words, even if ICE discovered her identity and presence due to an unlawful arrest, that does not prevent ICE from executing an arrest warrant and commencing removal proceedings based on that information. The unlawful arrest in the instant case is

even a step removed from that at issue in *Lopez-Mendoza*. There, the immigration agents themselves executed the unlawful arrest. 468 U.S. at 1035. Yet, the Court nonetheless upheld INS's ability to move forward with removal based on that arrest. *Id.* at 1050–51. Here, however, it was local police who arrested Martinez initially. (Doc. 1, #2). It was when the judge dismissed those charges against her (perhaps because that arrest had been unlawful) that ICE agents then executed its validly issued arrest warrant. (Doc. 16-3). In short, here, there is a degree of separation between the unlawful arrest and immigration detention that was lacking in *Lopez-Mendoza*. So if ICE could continue to move forward with removal proceedings in *Lopez-Mendoza*, that seems even more true here.

That said, *Lopez-Mendoza* does qualify its holding by noting that the exclusionary rule may be appropriate when there is evidence immigration agents committed an "egregious violation [] of the Fourth Amendment." 468 U.S. at 1050. But Martinez has not alleged any such "egregious violation" here. So Martinez's detention is not invalid on those grounds.

### 2. ICE's Arrest Warrant Was Valid.

Martinez next takes aim at the validity of the immigration detainer. (Doc. 21, #121–22, 126–27). She cites several out-of-circuit cases that allegedly question the constitutionality of detention based on ICE detainers. (*Id.*).

Martinez is correct to the extent she is arguing that immigration agents must have probable cause to detain someone. *Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015) ("This clear law establish[es] that the Constitution requires probable

cause for the immigration detention that a detainer requests."). And "[b]ecause [Martinez] was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification." *Id.* at 217 (citations omitted).

But there is a basic problem with Martinez's argument. Martinez was detained pursuant to Form I-200, Warrant for Arrest of Alien. (Doc. 16-3). The warrant specifically states that the immigration officer "ha[s] determined that there is probable cause to believe that [Martinez] is removable from the United States … based upon … biometric confirmation of the subject's identity and a records check." (*Id.*). So the officers had demonstrated probable cause to arrest and detain Martinez, separate and apart from the criminal arrest. Martinez fails to offer any evidence suggesting that is not the case.

### 3. The Due Process Clause Does Not Bar Martinez's Detention.

Lastly, Martinez asserts that detaining her violates the due process clause. (Doc. 21, #127). The Court certainly agrees that noncitizens are entitled to due process protections in removal proceedings. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam). But Respondents have not violated Martinez's right to due process here.

Martinez received a custody redetermination hearing on October 31, 2025, but the immigration judge denied bond because the judge determined Martinez was "a flight risk and danger to the community." (Doc. 16-4). Even when immigrants are not entitled to a bond hearing, the Supreme Court has concluded that deportable aliens

can be detained through the pendency of removal proceedings with no suggestion that such detention runs afoul of the Due Process Clause. *See Jennings v. Rodriguez*, 583 U.S. 281, 305–06 (2018). At this point, Martinez is in post-removal proceedings because the immigration judge issued a removal order on November 25, 2025, and Martinez has failed to appeal. (Doc. 16-5).[4] True, a removal order does not give ICE authority to indefinitely detain a person subject to removal either. Generally, "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). However, an alien "may be detained beyond the removal period." *Id.* § 1231(a)(6). And the Supreme Court has already determined that it is presumptively reasonable to detain an alien for six months without violating the due process clause. *Zadvydas*, 533 U.S. at 701. Admittedly, Martinez has been detained for roughly six months while this action has played out. But the government asserts that as soon as this case resolves, "they will have the ability to coordinate Petitioner's removal in fact within one calendar week." (Doc. 23, #139). So the Court finds this fits within the Supreme Court's presumptively reasonable period, and Petitioner's removal is certainly reasonably foreseeable. Thus, Martinez's detention does not violate the due process clause.

## CONCLUSION

For the reasons discussed above, the Court **DISMISSES WITHOUT PREJUDICE** Martinez's Amended Petition for Writ of Habeas Corpus (Doc. 21). The

---

[4] *See* supra note 1. Martinez has not informed the Court that she has renewed her attempt to appeal, so the removal order is presumably administratively final by this point.

Court also **DENIES AS MOOT** Respondents' Motions to Dismiss (Docs. 8, 9, 22) and Motion to Vacate (Doc. 20). Because the Court dismisses the Petition, the Court further **VACATES** its December 29, 2025, Order preventing Respondents from moving Petitioner to a different detention facility or removing her from the county. Finally, the Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

      **SO ORDERED.**

April 14, 2026
 **DATE**

                    **DOUGLAS R. COLE**
                    **UNITED STATES DISTRICT JUDGE**